**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: **16-20715**   CR-COOKE

/TORRES

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 2
18 U.S.C. § 982(a)(8)

UNITED STATES OF AMERICA

vs.

FILED by _____ D.C.

SEP 2 2 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. - MIAMI

CRAIG SIZER,
KEITH HOULIHAN,
MIGUEL MESA,
    a/k/a "Mike," "Mark Jacobs," "Mark Martin,"
CHARLES K. TOPPING,
    a/k/a "Charlie Kenn,"
ANITA SGARRO,
    a/k/a "Anita Simone,"
JACK WILLARD SINI,
    a/k/a "Jack Simmons," "Jack Willard,"
JUAN M. PEREZ ORTEGA,
    a/k/a "John Lucas,"
CHARLES DAVID SMIGROD,
    a/k/a "Charles David,"
MATTHEW WILLIAM WHEELER,
    a/k/a "Mathew Williams,"
MARTIN MILLER,
JASON DAVID HERSHBERGER,
JAMES WAYNE LONG,
    a/k/a "J.W. Long," and
SHAWNA LEIGH LYNCH,
    a/k/a "Shawna Cruz,"

                            Defendants.
_____/

                    **INDICTMENT**

        The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.     Sanomedics International Holdings, Inc. ("Sanomedics") was incorporated in Delaware in April 2009 to develop and market a line of non-contact infrared thermometers principally for consumer home healthcare for children and, under the "ThermoPet" brand name, for dogs. Sanomedics claimed that its thermometers provided non-contact temperature for children and pets, eliminating the invasive nature of other methods of temperature reading.  Sanomedics' principal place of business was located in Miami, Florida.  Sanomedics publically traded under the stock symbol "SIMH."

2.     Fun Cool Free ("FCF") was incorporated in Delaware and formed in 2014, with its principal place of business in Miami, Florida.  FCF claimed it held a smartphone gaming portfolio with other 500 gaming applications.   FCF also claimed to be raising funds for developers, executives, and marketers to "create the flow of newness on which this market thrives."

3.     Defendant **CRAIG SIZER** resided in Miami, Florida, and was Sanomedics' cofounder, Chief Executive Officer, and a controlling shareholder of Sanomedics. **SIZER** was also a controlling shareholder and officer and director of FCF.

4.     Defendant **KEITH HOULIHAN** resided in Boca Raton, Florida, and was Sanomedics' cofounder, President of Sanomedics, and a controlling shareholder of Sanomedics.

5.     Defendant **MIGUEL MESA** resided in Miami Lakes, Florida, and operated a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

6.     Defendant **CHARLES K. TOPPING** resided in North Bay Village, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

7.      Defendant **ANITA SGARRO** resided in Marina Del Ray, California, and operated a telephone sales room in Marina Del Rey, California, that sold shares of Sanomedics stock.

8.      Defendant **JACK WILLARD SINI** resided in Miami, Florida and Boynton Beach, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

9.      Defendant **JUAN M. PEREZ ORTEGA** resided in Miami Lakes, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

10.     Defendant **CHARLES DAVID SMIGROD** resided in Coconut Grove, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

11.     Defendant **MATTHEW WILLIAM WHEELER** resided in Miami, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

12.     Defendant **MARTIN MILLER** resided in Miami Beach, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

13.     Defendant **JASON DAVID HERSHBERGER** resided in Fort Lauderdale, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics stock.

14.     Defendant **JAMES WAYNE LONG** resided in Miramar, Florida, and was a sales agent in a telephone sales room in Miami Lakes, Florida, that sold shares of FCF stock.

15.     Defendant **SHAWNA LEIGH LYNCH** resided in Fort Lauderdale, Florida, and

was employed in a telephone sales room in Miami Lakes, Florida, that sold shares of Sanomedics and FCF stock.

## COUNT 1
## CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD
### (18 U.S.C. § 1349)

1.      Paragraphs 1, 3 through 13, and 15 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

2.      From in or around April 2009, through in or around August 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CRAIG SIZER,**
**KEITH HOULIHAN,**
**MIGUEL MESA,**
**a/k/a "Mike," "Mark Jacobs," "Mark Martin,"**
**CHARLES K. TOPPING,**
**a/k/a "Charlie Kenn,"**
**ANITA SGARRO,**
**a/k/a "Anita Simone,"**
**JACK WILLARD SINI,**
**a/k/a "Jack Simmons," "Jack Willard,"**
**JUAN M. PEREZ ORTEGA,**
**a/k/a "John Lucas,"**
**CHARLES DAVID SMIGROD,**
**a/k/a "Charles David,"**
**MATTHEW WILLIAM WHEELER,**
**a/k/a "Mathew Williams,"**
**MARTIN MILLER,**
**JASON DAVID HERSHBERGER, and**
**SHAWNA LEIGH LYNCH,**
**a/k/a "Shawna Cruz,"**

and their co-conspirators did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to:

(a)      knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and

fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and, for the purpose of executing such scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b)    knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and transmitting and causing to be transmitted in  interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false, and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Sanomedics stock, and the defendants and their co-conspirators' excessive commissions and fees.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      In or around April 2009, **CRAIG SIZER** incorporated Sanomedics International Holdings, Inc. in Delaware, and in or around May 2009, he incorporated Sanomedics, LLC, in Florida.

5.      On or about July 2009, **CRAIG SIZER** opened bank accounts in the name of Sanomedics International Holdings, Inc. and Sanomedics, LLC at a financial institution located in Miami-Dade County, Florida. **SIZER** and **KEITH HOULIHAN** had signing authority on the Sanomedics International Holdings, Inc. bank account. **SIZER** retained sole signing authority on the Sanomedics, LLC bank account.

6.      On or about May 2009 until on or about May 2010, **CRAIG SIZER** and **KEITH HOULIHAN** solicited, offered, and sold shares of Sanomedics stock to investors to raise capital for Sanomedics. Beginning in or around September 2009, **SIZER** and **HOULIHAN** hired telephone room managers, including **MIGUEL MESA** and **ANITA SGARRO**, to hire other sales agents to solicit, offer and sell shares of Sanomedics stock to investors via telemarketing.

7.      Sales agents sold Sanomedics stock in private placement offerings, and eventually, Sanomedics common stock traded on the Over-The-Counter Bulletin Board ("OTCBB").

8.      Sanomedics traded as an illiquid, thinly-traded stock on the OTCBB, which meant the stock traded in low volumes, by a limited number of interested buyers and sellers, and often lead to volatile changes in price when a stock trade occurred.

9.      The defendants and other co-conspirator sales agents used lead lists consisting of contact information for potential investors. Through telemarketing, sale agents contacted potential investors, solicited, offered, and sold shares of Sanomedics stock to investors located throughout the United States.

10.     **CRAIG SIZER** and **MIGUEL MESA** created and approved all sales "scripts"

used to solicit potential investors. **MESA** and **ANITA SGARRO** trained their respective sales agents how to pitch Sanomedics. **SIZER** also assisted **MESA** and **SGARRO** in crafting sales pitches to investors.

11.     To sell Sanomedics stock, the defendants and their co-conspirators told potential investors that, for a limited time only, a "limited number" of shares of Sanomedics stock were available to them at a steep discount to the price of shares trading on the OTCBB. The defendants knew this to be false because **CRAIG SIZER** and **KEITH HOULIHAN** controlled the number of Sanomedics shares and often authorized "stock splits" to generate more shares.

12.     The defendants and their co-conspirators told investors that they could not transfer or sell the shares of Sanomedics stock for a limited time, such as, for three or six months after purchase. In truth, investors were unable to sell or transfer Sanomedics shares for years because the stock shares remained restricted.

13.     During the offer and sale of the Sanomedics stock, the defendants and their co-conspirators often used aliases or otherwise provided false and fictitious names to investors to hide the defendants' true identities.

14.     The defendants and other co-conspirator sales agents often referred investors to **CHARLES K. TOPPING**, the "loader" who solicited, offered, and sold additional and allegedly recently available shares of Sanomedics stock to current investors. Once an initial deal was closed, to induce investors to further invest, the defendants and their co-conspirators falsely told investors that **TOPPING** was an executive at Sanomedics and that he had a vast personal wealth. They also falsely told investors that **TOPPING** was in a unique positon with Sanomedics and that he was the only person that could grant the investor access to purchase the newly available stock. Several investors purchased more stock through this practice.

15.     During the course of their sale of Sanomedics stock, the defendants and their co-conspirators provided investors with sample non-contact thermometers and with other promotional materials, including press releases, which contained false and fraudulent information describing Sanomedics.

16.     In some instances, sales agents would transfer investors to **SHAWNA LEIGH LYNCH** who purported to be in the "compliance" department.  In reality, there was no compliance department, and **LYNCH** and her co-conspirators used this deception as a means of creating the appearance of a larger, legitimate business to investors.  And to further this false appearance of legitimacy, **LYNCH** often told investors during her "compliance" telephone calls with them that the calls were being recorded, for, among other reasons, to validate the completed transaction.  She made no such recordings nor did anyone else.

17.     The defendants and their co-conspirators directed investors to make payments for Sanomedics stock transaction by: (a) transferring funds electronically via interstate wires to bank accounts **CRAIG SIZER** controlled; or (b) mailing checks to Sanomedics offices located in Miami, Florida.

18.     **CRAIG SIZER** and **KEITH HOULIHAN** used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to themselves, to sales agent managers, and others they hired, including **MIGUEL MESA** and **ANITA SGARRO**.

19.     **CRAIG SIZER** and **KEITH HOULIHAN** paid **MIGUEL MESA** approximately fifty percent of all investor proceeds generated by **MESA** and his telephone sales room from the sale of Sanomedics stock.  In other words, for every dollar **MESA** and his salesroom group raised, **MESA** received approximately fifty cents as his room's fee and commission.

20.     Using the funds received from **CRAIG SIZER** and **KEITH HOULIHAN**, **MIGUEL MESA** paid sales commissions to sales agents and others he hired, including **CHARLES K. TOPPING, CHARLES DAVID SMIGROD, JACK WILLARD SINI, MATTHEW WILLIAM WHEELER, JUAN M. PEREZ ORTEGA, MARTIN MILLER, JASON DAVID HERSHBERGER**, and **SHAWNA LEIGH LYNCH**, or in some cases, to companies those individuals owned.

21.     Using the funds received from **CRAIG SIZER** and **KEITH HOULIHAN** from the sale of Sanomedics stock, **MIGUEL MESA** paid **ANITA SGARRO** sales commissions, who, in turn, paid sales commissions to sales agents and others she hired, including other unindicted co-conspirators, or in some cases, to companies those individuals owned.

22.     All combined, the defendants and their co-conspirators stole approximately 80% of investor proceeds in undisclosed commissions and fees.

23.     To induce investors to provide money to the defendants and their co-conspirators, the defendants and their co-conspirators made and caused others to make numerous materially false and fraudulent statement to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

### **Materially False Statements**

(a)     That no commission or fees would be charged to investors and that sales agents were paid in stock or by an hourly wage;

(b)     That sales agents were employees of Sanomedics and providing investors a unique opportunity to purchase a "limited number of shares" directly from the company;

(c)     That sales agents were personally invested in the company and making significant

money from their investment;

(d)    That Sanomedics was a "safe investment," "profitable investment," and one where "you won't lose money."

(e)    That the value of Sanomedics stock would increase significantly, with purported trading prices of $2 to $15;

(f)    That the Sanomedics stock would be trading "within weeks" on the NASDAQ;

(g)    That (1) J.S., a former CEO of Apple Inc. and former president of PepsiCo, was the largest Sanomedics investor with a 10% share in the company; and (2) J.S. was on the Sanomedics Board of Directors and/or involved in the management of Sanomedics;

(h)    That P.F., the former CEO of IVAX Corporation, and a billionaire with significant ties to the medical and pharmaceutical industries, was an investor or an imminent investor in Sanomedics;

(i)    That C.M., the "Dog Whisper," used the ThermoPet, carried one "in his back pocket," and would soon become the spokesperson for the pet thermometer; and

(j)    That Sanomedics was (1) expanding its business into numerous other product lines, including EKG machines and sleep apnea products; and (2) developing contracts to sell non-contact thermometers to emergency rooms, telehealth providers, the military, the Transportation Security Administration, and even purchasing a string of its very own emergency rooms.

### Concealment and Omission of Material Facts

(k)    That Sanomedics stock shares sold to investors could not be sold or transferred for years after purchase because of their restricted nature; and

(l)    That the defendants and their co-conspirators used approximately 80% of a given investment as commissions or fees.

24.    Over the course of the scheme, the defendants and their co-conspirators, falsely and fraudulently caused over 700 individuals to purchase Sanomedics stock, and raised over $21 million through the sale of Sanomedics stock, misappropriating approximately 80% of the money as undisclosed commissions and fees.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2-9**
**MAIL FRAUD**
**(18 U.S.C. § 1341)**

1.    Paragraphs 1, 3 through 13, and 15 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

2.    From in or around September 2011, through in or around August 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**CRAIG SIZER,**
**KEITH HOULIHAN,**
**MIGUEL MESA,**
a/k/a "Mike," "Mark Jacobs," "Mark Martin,"
**CHARLES K. TOPPING,**
a/k/a "Charlie Kenn,"
**ANITA SGARRO,**
a/k/a "Anita Simone,"
**JACK WILLARD SINI,**
a/k/a "Jack Simmons," "Jack Willard,"
**JUAN M. PEREZ ORTEGA,**
a/k/a "John Lucas,"
**CHARLES DAVID SMIGROD,**
a/k/a "Charles David,"
**MATTHEW WILLIAM WHEELER,**
a/k/a "Mathew Williams,"
**MARTIN MILLER,**
**JASON DAVID HERSHBERGER, and**
**SHAWNA LEIGH LYNCH,**
a/k/a "Shawna Cruz,"

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and, for the purpose of executing such scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Sanomedics stock, and the defendants and their accomplices' commissions and fees.

## THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 24 of the Manner and Means Section of Count 1 and are repeated, realleged, and fully incorporated herein as a description of the scheme and artifice.

## USE OF THE MAILS

5.      On or about the date enumerated as to each count below, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, did knowingly

cause to be delivered certain mail matter by the United States Postal Service and by private or

commercial interstate carrier, according to the directions thereon, as more particularly described

below:

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 2 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING, and ANITA SGARRO | November 30, 2011 | FedEx of check #8144 drawn on Investor G.S.'s account in Hannibal, Missouri, to Sanomedics, located in the Southern District of Florida |
| 3 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING, JUAN M. PEREZ ORTEGA and SHAWNA LEIGH LYNCH | July 9, 2012 | FedEx of check #5813 drawn on Investor G.G.'s account in Frankewing, Tennessee, to Sanomedics, located in the Southern District of Florida. |
| 4 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING and MATTHEW WILLIAM WHEELER | August 10, 2012 | FedEx of check #145614 drawn on Investor J.C.'s account in Troy, New York, to Sanomedics, located in the Southern District of Florida. |
| 5 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING and JASON DAVID HERSHBERGER | January 4, 2013 | FedEx of check #8088 drawn on Investor A.C.'s company's account in Cayuga, Indiana, to Sanomedics, located in the Southern District of Florida. |
| 6 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING and MARTIN MILLER | May 12, 2014 | FedEx of certificate for 10,000 shares of Sanomedics stock sent to Investor M.G. in Bolton, Connecticut, from an address located in the Southern District of Florida. |

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 7 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA and CHARLES K. TOPPING, | July 3, 2014 | FedEx of check #1955 drawn on Investor D.H.'s account in Ellsworth, Iowa, to Sanomedics, located in the Southern District of Florida. |
| 8 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING and JACK WILLARD SINI | July 9, 2014 | FedEx of check #1826 drawn on Investor J.D.'s account in Burlington, Massachusetts, to Sanomedics, located in the Southern District of Florida. |
| 9 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING and CHARLES DAVID SMIGROD | July 22, 2014 | FedEx of check #20050 drawn on Investor D.M.'s company's account in Otis, Colorado, to Sanomedics, located in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 10
## WIRE FRAUD
### (18 U.S.C. § 1343)

1.    Paragraphs 1 and 3 through 7 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

2.    From in or around September 2011, through in or around August 2015, in the Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**CRAIG SIZER,**
**KEITH HOULIHAN,**
**MIGUEL MESA,**
**a/k/a "Mike," "Mark Jacobs," "Mark Martin,"**
**CHARLES K. TOPPING,**
**a/k/a "Charlie Kenn," and**
**ANITA SGARRO, a/k/a "Anita Simone,"**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were

14

false and fraudulent when made or were made with a reckless indifference to the truth, and transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false and concealing and failing to state material facts concerning, among other things, the safety, profitability, and transferability of Sanomedics stock, and the defendants and their accomplices' commissions and fees.

## THE SCHEME AND ARTIFICE

4.     Paragraphs 4 through 24 of the Manner and Means Section of Count 1, as only to defendants **CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, CHARLES K. TOPPING,** and **ANITA SGARRO,** are repeated, realleged, and fully incorporated herein as a description of the scheme and artifice.

## USE OF THE WIRES

5.     On or about the date enumerated below, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, did knowingly transmit and caused to be transmitted in interstate commerce, by means of wire communications, certain writings, signs,

pictures, and sounds, as more particularly described below:

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 10 | CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA CHARLES K. TOPPING and ANITA SGARRO | July 13, 2012 | Investor A.O.'s $54,982 wire from a bank account located in Ontario, Canada, to a bank account located in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 11
## CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD
### (18 U.S.C. § 1349)

1.       Paragraphs 2, 3, 5, 6, 8 through 12, 14, and 15 of the General Allegations section

of this Indictment are realleged and fully incorporated herein by reference.

2.       From in or around August 2014, through in or around December 2015, in Miami-

Dade County, in the Southern District of Florida, and elsewhere, the defendants,

CRAIG SIZER,
MIGUEL MESA,
a/k/a "Mike," "Mark Jacobs," "Mark Martin,"
CHARLES K. TOPPING,
a/k/a "Charlie Kenn,"
JACK WILLARD SINI,
a/k/a "Jack Simmons," "Jack Willard,"
JUAN M. PEREZ ORTEGA,
a/k/a "John Lucas,"
CHARLES DAVID SMIGROD,
a/k/a "Charles David,"
MATTHEW WILLIAM WHEELER,
a/k/a "Mathew Williams,"
MARTIN MILLER,
JAMES WAYNE LONG,
a/k/a "J.W. Long," and
SHAWNA LEIGH LYNCH,
a/k/a "Shawna Cruz,"

and their co-conspirators did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to:

      (a)     knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and, for the purpose of executing such scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

      (b)     knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false, and concealing and failing to state material facts concerning, among other things, the safety and profitability of Fun Cool Free stock, and the defendants and their co-conspirators' commissions and fees.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      In or around August 2014, **CRAIG SIZER** hired **MIGUEL MESA** to act as a telephone sales room manager, to hire other sales agents to solicit, offer and sell shares of FCF stock to investors via telemarketing.  The stock was offered in the form of a private placement offering that pre-dated a purported initial public offering ("IPO") that the defendants and their co-conspirators touted as coming soon.

5.      In or around November 2014, **CRAIG SIZER** incorporated Fun Cool Free, Inc., in Delaware, and in or around December 2014, he filed an application to conduct FCF business in Florida.

6.      In or around December 2014, **CRAIG SIZER** opened accounts on behalf of FCF at a financial institution located in the Southern District of Florida.  **SIZER** was a signatory on the accounts and had the authority to make payments and transfer money.

7.      The defendants and other co-conspirator sales agents used lead lists consisting of contact information for potential investors. Through telemarketing, sale agents contacted potential investors, solicited, offered, and sold shares of FCF stock to investors located throughout the

United States.

8.     **CRAIG SIZER** and **MIGUEL MESA** created and approved all sales "scripts" used to solicit potential investors.  **MESA** trained his sales agents on how to pitch FCF.  **SIZER** also assisted **MESA** in crafting sales pitches to investors.

9.     To sell FCF stock, the defendants and their co-conspirators told potential investors that, for a limited time only, a "limited number" of shares of FCF stock were available to them at a pre-IPO discount.

10.     During the offer and sale of the FCF stock, the defendants and their co-conspirators often used aliases or otherwise provided false and fictitious names to investors to hide the defendants' true identities.

11.     The defendants and other co-conspirator sales agents often referred investors to **CHARLES K. TOPPING**, the "loader" who solicited, offered, and sold additional and allegedly recently available shares of FCF stock to current investors.  Once an initial deal was closed, to induce investors to further invest, the defendants and their co-conspirators falsely told investors that **TOPPING** was an executive at FCF and that he had a vast personal wealth.  They also falsely told investors that **TOPPING** was in a unique positon with FCF and that he was the only person that could grant the investor access to purchase the newly available stock.  Several investors purchased more stock through this practice.

12.     During the course of their sale of FCF stock, the defendants and their co-conspirators provided investors with promotional materials, including press releases, which contained false and fraudulent information describing FCF.

13.     After receiving investor proceeds for the sale of purported shares of FCF stock, the defendants and their co-conspirators generated and forwarded documents to investors, including

stock purchase agreements and transaction confirmation letters confirming purchases of FCF stock.

14.     In some instances, sales agents would transfer investors to **SHAWNA LEIGH LYNCH** who purported to be in the "compliance" department. In reality, there was no compliance department, and **LYNCH** and her co-conspirators used this deception as a means of creating the appearance of a larger, legitimate business to investors. And to further this false appearance of legitimacy, **LYNCH** often told investors during her "compliance" telephone calls with them that the calls were being recorded, for, among other reasons, to validate the completed transaction. She made no such recordings.

15.     The defendants and their co-conspirators directed investors to make payments for FCF stock transaction by: (a) transferring funds electronically via interstate wires to bank accounts **CRAIG SIZER** controlled; or (b) mailing checks to Fun Cool Free's offices located in the Southern District of Florida.

16.     **CRAIG SIZER** used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to himself and to sales agent managers and others they hired, including **MIGUEL MESA**.

17.     Using the funds received from **CRAIG SIZER** for the sale of FCF stock, **MIGUEL MESA** paid sales commissions to sales agents and salaries to others he hired, including **CHARLES K. TOPPING, CHARLES DAVID SMIGROD, JAMES WAYNE LONG, JACK WILLARD SINI, MATTHEW WILLIAM WHEELER, JUAN M. PEREZ ORTEGA, MARTIN MILLER, and SHAWNA LEIGH LYNCH**, or in some cases, to companies those individuals owned.

18.     All combined, the defendants and their co-conspirators took approximately 80% of

investor proceeds in commissions and fees.

19.     To induce investors to provide money to the defendants and their co-conspirators, the defendants and their co-conspirators made and caused others to make numerous materially false and fraudulent statement to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including among other things, the following:

### Materially False Statements

(a)     That no commission or fees would be charged to investors and that sales agents were paid in stock or by an hourly wage;

(b)     That sales agents were employees of Fun Cool Free and providing investors a unique opportunity to purchase a "limited number of shares" directly from the company;

(c)     That sales agents were personally invested in the company and making significant money from their investment;

(d)     That sales agents "guaranteed the safety of investment, or your money back;"

(e)     That Fun Cool Free would have an initial public offering within a couple weeks or a month, with purported trading prices of $5 to $15;

(f)     That (1) J.S., the former CEO of Apple Inc. and former president of PepsiCo, was a large investor in the company; and (2) J.S. was on the Board of Directors;

(g)     That Fun Cool Free had a partnership with Apple Inc. for its gaming applications; and

### Concealment and Omission of Material Facts

(h)     That the defendants and their co-conspirators used approximately 80% of a given

investment as commission or fees, or misappropriated all of the investor proceeds.

20.     Over the course of the scheme, the defendants and their co-conspirators, falsely and fraudulently caused approximately seventy individuals to purchase Fun Cool Free stock, and raised approximately $1.5 million through the sale of Fun Cool Free stock, misappropriating approximately 80% of the money as undisclosed commissions and fees.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 12-13
## MAIL FRAUD
### (18 U.S.C. § 1341)

1.     Paragraphs 2, 3, 5, 6, 11, and 14 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

2.     From in or around August 2014, through in or around December 2015, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**CRAIG SIZER,**
**MIGUEL MESA,**
**a/k/a "Mike," "Mark Jacobs," "Mark Martin,"**
**CHARLES K. TOPPING,**
**a/k/a "Charlie Kenn,"**
**MATTHEW WILLIAM WHEELER,**
**a/k/a "Mathew Williams," and**
**JAMES WAYNE LONG,**
**a/k/a "J.W. Long,"**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, and, for the purpose of executing such scheme and artifice, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier,

according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by misappropriating investor money for their personal use and benefit by making material representations that were false and concealing and failing to state material facts concerning, among other things, the safety and profitability of Fun Cool Free stock, and the defendants and their accomplices' commissions and fees.

## THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 20 of the Manner and Means Section of Count 11, as to defendants **CRAIG SIZER, MIGUEL MESA, CHARLES K. TOPPING, MATTHEW WILLIAM WHEELER,** and **JAMES WAYNE LONG,** are realleged and fully incorporated herein as a description of the scheme and artifice.

## USE OF THE MAILS

5.      On or about the date enumerated as to each count below, the defendants, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made or were made with a reckless indifference to the truth, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private or commercial interstate carrier, according to the directions thereon, as more particularly described below:

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 12 | **CRAIG SIZER, MIGUEL MESA, and JAMES WAYNE LONG** | July 1, 2015 | FedEx of FCF stock certificate for 25,000 shares to investor R.L. in Macomb, Michigan, from an address located in the Southern District of Florida. |
| 13 | **CRAIG SIZER, MIGUEL MESA, CHARLES K. TOPPING and MATTHEW WILLIAM WHEELER** | July 21, 2015 | FedEx of check #125 drawn on Investor B.M.'s account in Fairfax, Virginia, to FCF, located in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(8))

1.      The allegations of this Indictment are re-alleged, and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.      Upon conviction of any  violation of Title 18, United States Code, Sections 1341, 1343 or 1349, as alleged in this Indictment, the defendants, **CRAIG SIZER, KEITH HOULIHAN, MIGUEL MESA, ANITA SGARRO, CHARLES K. TOPPING, CHARLES DAVID SMIGROD, JAMES WAYNE LONG, JACK WILLARD SINI, MATTHEW WHEELER, JUAN M. PEREZ ORTEGA, MARTIN MILLER, JASON DAVID HERSHBERGER,** and **SHAWNA LEIGH LYNCH,** shall forfeit to the United States any property, real or personal, (a) used or intended to be used to commit, to facilitate, or to promote the commission of such offense; and (b) constituting, derived from, or traceable to the gross proceeds the defendants obtained directly or indirectly as a result of such violation, pursuant to Title 18, United States Code, Section 982(a)(8).

3.      The property subject to forfeiture includes, but is not limited to, the sum of approximately $23,000,000.00, in connection with the Sanomedics conspiracy alleged in Count 1, and approximately $1,500,000.00, in connection with the Fun Cool Free conspiracy alleged in Count 11, which amounts are equal to the gross proceeds obtained as a result of the respective conspiracies alleged in this Indictment, which the United States will seek as a forfeiture money judgment as part of each defendant's sentence.

4.      If the property above described as being subject to forfeiture, as a result of any act or omission of the defendants,

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of the proceeds traceable to the violations alleged in this Indictment, pursuant to Title 21, United States Code, Section 853(p), including, but not limited to the following:

i.      555 N.E. 57 Street, Miami, FL, titled in the names of Craig Sizer and Maria Sizer;

ii.     18008 Jazz Lane, Boca Raton, FL, titled in the names of Keith J. Houlihan and Ingrid Houlihan;

iii.    2014 Audi A7, VIN WAUWGAFC2EN045901, titled in the name of Keith J. Houlihan;

iv.     8220 N.W. 157th Terrace, Miami Lakes, FL 33016, titled in the name of Miguel

Mesa;

v.      12084 Bacchus Road, Port Charlotte, FL, titled in the name of Charles K. Topping;

vi.     2013 Black BMW 750LI, VIN WBAYE8C57DD132761, titled in the name of Miguel Mesa;

vii.    2013 GMC Sierra Denali, VIN 3GTP1XE22DG137294, titled in the name of Charles K. Topping; and

viii.   1998 30' Grady vessel, HIN NTLEA554A898, titled in the name of Charles K. Topping;

All pursuant to Title 18, United States Code, Section 982(a)(8), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____

FOREPERSON

_____

WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____

ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY

_____

REBECCA D. RYAN
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE

26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

**CRAIG SIZER, et al.**

Defendants.
_____ /

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

Court Division: (Select One)

New Defendant(s)          Yes _____     No _____
Number of New Defendants              _____
Total number of counts                _____

__X__  Miami    _____  Key West
_____  FTL      _____  WPB     _____  FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)        No
    List language and/or dialect        English

4.  This case will take    10    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                                (Check only one)

    I      0  to  5 days                            Petty
    II     6  to 10 days          X                 Minor
    III    11 to 20 days                            Misdem.
    IV     21 to 60 days                            Felony       X
    V      61 days and over

6.  Has this case been previously filed in this District Court?  (Yes or No)    No
    If yes:
    Judge:                                  Case No.
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?        (Yes or No)    No
    If yes:
    Magistrate Case No.
    Related Miscellaneous numbers:
    Defendant(s) in federal custody as of
    Defendant(s) in state custody as of
    Rule 20 from the _____  District of

    Is this a potential death penalty case? (Yes or No)    No

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____  Yes    X  No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    _____  Yes    X  No

Roger Cruz
ASSISTANT UNITED STATES ATTORNEY

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  Craig Sizer

**Case No**: 

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

 **\* Max. Penalty**:   20 years' imprisonment

Counts 2-9:

  Mail Fraud

Title 18, United States Code, Section 1341

 **\* Max. Penalty**:   20 years' imprisonment as to each count

Count 10:

   Wire Fraud

Title 18, United States Code, Section 1343

 **\* Max. Penalty**:      20 years' imprisonment

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

 **\* Max. Penalty**:      20 years' imprisonment

Counts 12-13:

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:      20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Keith Houlihan

**Case No:** _____

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**   20 years' imprisonment

Counts 2-9:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**   20 years' imprisonment as to each count

Count 10:

  Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty:**      20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  **Miguel Mesa**

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:   20 years' imprisonment

Counts 2-9:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:   20 years' imprisonment as to each count

Count 10:

  Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:      20 years' imprisonment

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      20 years' imprisonment

Counts 12-13:

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:   20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  Charles K. Topping

**Case No**:

Count 1:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:   20 years' imprisonment

Counts 2-9:

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:   20 years' imprisonment as to cach count

Count 10:

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:       20 years' imprisonment

Count 11:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:       20 years' imprisonment

Count 13:

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:      20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** **Anita Sgarro**

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**   20 years' imprisonment

Counts 2:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**   20 years' imprisonment as to each count

Count 10:

  Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty:**       20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines,
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  Jack Willard Sini

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**  20 years' imprisonment

Count 8:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**  20 years' imprisonment as to each count

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**    20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  **Juan M. Perez Ortega**

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**   20 years' imprisonment

Count 3:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**   20 years' imprisonment as to each count

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**       20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  Charles David Smigrod

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**  20 years' imprisonment

Count 9:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**  20 years' imprisonment as to each count

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**      20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  Matthew William Wheeler

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:   20 years' imprisonment

Count 4:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:   20 years' imprisonment as to each count

Count 11:

  Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:       20 years' imprisonment

Count 13:

  Mail Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:       20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**:  <u>**Martin Miller**</u>

**Case No**: _____

Count 1:

  <u>Conspiracy to Commit Mail and Wire Fraud</u>

<u>Title 18, United States Code, Section 1349</u>

**\* Max. Penalty**:   20 years' imprisonment

Count 6:

  <u>Mail Fraud</u>

<u>Title 18, United States Code, Section 1341</u>

**\* Max. Penalty**:   20 years' imprisonment as to each count

Count 11:

  <u>Mail Fraud</u>

<u>Title 18, United States Code, Section 1349</u>

**\* Max. Penalty**:    20 years' imprisonment

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  __Jason David Hershberger__

**Case No**: _____

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:   20 years' imprisonment

Count 5:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty**:   20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:  James Wayne Long**

**Case No:**

Count 11:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**        20 years' imprisonment as to each count

Count 12:

Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**        20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Shawna Lynch

**Case No:**

Count 1:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**   20 years' imprisonment

Count 3:

  Mail Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**   20 years' imprisonment as to each count

Count 11:

  Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1341

**\* Max. Penalty:**      20 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, overlap does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**